## WILLIAM WEST & wife *vs.* CITY OF LYNN.

If a transparency to announce a show in a building is fastened at one end to the building, and at the other is supported temporarily by a pole resting on the sidewalk of a street in a city, and the pole is so insecurely put up that it is likely to fall and injure persons passing on the sidewalk, the street is defective within the Gen. Sts. *c.* 44, § 22, and the city is liable for injuries caused by the fall of the pole.

A party cannot except to instructions given to a jury, although incorrect, if he has himself requested them to be given.

An exception to a refusal of a judge to instruct the jury as prayed for will not be sustained if it appears from the bill of exceptions that the party excepting could not have been prejudiced by such refusal.

TORT by William West and Martha A. West, his wife, under the Gen. Sts. *c.* 44, § 22, to recover for personal injuries to her occasioned by a defect in Union Street in Lynn, a highway which the defendants were bound to keep in repair. Writ dated April 22, 1871. At the trial in the Superior Court, before *Putnam,* J., the following facts appeared :

" About seven o'clock on the morning of February 7, 1871, the members of a theatrical company, who were to give an entertainment in the hall connected with the Sagamore Hotel, on Union Street, with the consent of the proprietor of the hotel placed a transparency over the sidewalk in front of the entrance to the hotel. The transparency was ten feet long, four feet high and fourteen inches wide. It had a wooden bottom, and the sides and top consisted of a frame covered with canvas. One end was nailed to the balcony of the hotel and the outer end was to have been supported by ropes or wires from the windows above ; but as the rooms where the windows were were occupied by guests at that hour of the morning, a pike pole was put temporarily under the outer end to steady it, till it should be guyed up by ropes or wires as intended, which pole rested on the sidewalk in a little hollow by the edge stone. The pole was about twelve feet long, two and a half inches through at the upper end, which had an iron ring around it and an iron point inserted in it, and an inch and a half through at the lower end. The iron point was stuck into the end of the transparency, and the pole inclined slightly from the point where it rested on the sidewalk towards the transparency. The sidewalk was fifteen feet wide at this point and paved with bricks, and the street was one of the most travelled thoroughfares. The pole remained in this position till between three and four o'clock in the afternoon, when the accident happened. The plaintiffs did not contend that the sidewalk was in any way out of repair or unsafe, except by reason of the transparency and pole."

The plaintiff, Martha A. West, who was an attendant in a restaurant in the basement story of the hotel, immediately adjoining the entrance, and with door and windows opening on the sidewalk, testified "that she was looking at the persons who were

putting up the transparency in the morning, and supporting the end of it with the pole; that she remained in the restaurant till after dinner and then went to her lodgings and returned between three and four o'clock; and that as she passed under the transparency on her return the pole fell upon her, striking her foot and inflicting the injury alleged."

Upon cross-examination she testified " that she thought it unsafe at the time they were putting it up; that she heard it spoken of during the morning in the restaurant as unsafe; that she did not notice it when she went out to go to her lodgings, although she went under the transparency; but that on her return she did notice it, and said that she then had the impression, (she also spoke of it as a presentiment,) that if she went under it the pole would fall on her and kill her." She was then asked why she went under it, and replied, "I thought people on the other side would laugh at me if I did not, so I went under it."

There was evidence tending to prove notice to the defendants of the unsafe condition of the pole and transparency.

Upon the question of the exercise of due care by Martha A. West, the defendants introduced evidence " that the pole and transparency were distinctly visible from the door and windows of the saloon in which she was employed; that she and other servants in the saloon were watching the progress of the work and from time to time looking out upon the pole and transparency; that she and they were warned of its insecurity, and were conversing about it in the saloon shortly before the accident happened; and that she appeared before the committee on claims of the city of Lynn, in April 1871, and there testified that she noticed the putting up of the transparency, that she thought it was left unsafe, and that she had occasion to go home and on her return felt a presentiment that she was to be injured by that transparency or something connected with it."

The defendants asked the judge to rule, as matter of law, that upon the plaintiffs' evidence there was no defect in Union Street for which the defendants were liable, but the judge refused so to rule, and instructed the jury as follows: " If the pole was put up upon the sidewalk for the purpose of holding up the transpar-

ency, and was in such an insecure condition as that it was likely to fall and injure persons passing upon the sidewalk, it may be considered a defective condition of the sidewalk." This was the only instruction given to the jury, as to the peculiar character of this defect, although general instructions as to the duties of towns in keeping their sidewalks safe, and as to what constituted a defect, were given. The defendants requested the judge to rule that the transparency and pole were no part of the sidewalk or street; but the judge ruled that, although strictly no part of the sidewalk, they might be so connected with the sidewalk as to make travel on the sidewalk unsafe.

The defendants then asked the judge to rule, as matter of law, that Martha A. West, upon her own statement, was not in the exercise of due care and could not recover; but the judge declined so to rule. The defendants then asked the judge to instruct the jury, " That if Martha A. West thought the transparency and its attachments were unsafe, and, so thinking, she went under and was hurt, she was not in the exercise of due care and cannot recover ; that if she thought it was dangerous, and had the impression it would fall on her and kill her if she went under it, she was not in the exercise of due care and cannot recover ; that if, thinking it was dangerous and having the impression it would fall on her if she went under it, she went under it because she thought people would laugh at her if she did not, she was not in the exercise of due care and cannot recover."

The judge gave these instructions as prayed for, and added, " That she was called upon to exercise such care as ordinarily prudent persons exercise under similar circumstances ; that the fact of the knowledge of the existence of the defect was not conclusive against her ; that the question was, what was her state of mind at that time, — was it in her mind at the time that it was dangerous, if so, it was a want of proper care on her part to go under it."

The defendants then asked the judge to instruct the jury, " that if she thought in the morning that it was unsafe, and afterwards went under it, knowing she was passing under it, and no change had meanwhile taken place, she cannot recover," but the judge declined to give that or further instructions on this point.

The jury returned a verdict for the plaintiffs for $1700, and the defendants alleged exceptions.

*W. C. Endicott,* (*S. E. Ireson* with him,) for the defendants. This case does not come within *Drake* v. *Lowell,* 13 Met. 292; *Day* v. *Milford,* 5 Allen, 98; and *Pedrick* v. *Bailey,* 12 Gray, 161; but it falls under *Hixon* v. *Lowell,* 13 Gray, 59; *Keith* v. *Easton,* 2 Allen, 552; *Barber* v. *Roxbury,* 11 Allen, 318; *Macomber* v. *Taunton,* 100 Mass. 255; *Jones* v. *Boston,* 104 Mass. 75.

Towns are held liable for defective awnings, on the ground that awnings are permanent structures, adapted to the sidewalk as a part of its construction and use as a sidewalk. They afford protection and shelter to the foot passenger, and so become part of the way itself. The court has repeatedly remarked that in *Drake* v. *Lowell, ubi supra,* the limit of this liability is reached. The distinctions between this case, and *Drake* v. *Lowell,* are numerous. The transparency with its support was put up for purposes relating exclusively to the occupancy of the hotel. It was in no wise adapted to the use of the sidewalk or a part of its construction. It was not fixed or permanent, but temporary, and a mere incident or attachment to the building itself. Under the ruling excepted to, a town would be held liable for any of the obstructions, accidents or events enumerated by Hoar, J., in *Hixon* v. *Lowell, ubi supra,* if the jury considered the highway to be rendered unsafe thereby.

Martha A. West was not in the exercise of due care. *Gilman* v. *Deerfield,* 15 Gray, 577. *Wilson* v. *Charlestown,* 8 Allen, 137. The failure to recall the well known fact that a place is dangerous, at the time of passing over it, is in itself negligence.

*S. B. Ives, Jr., & C. W. Richardson,* for the plaintiffs.

WELLS, J. As to the question of defect, we think this case must be governed by *Drake* v. *Lowell,* 13 Met. 292, and *Day* v. *Milford,* 5 Allen, 98.

The instructions to the jury did not correctly state the law applicable to the case. But in so far as they were wrong, they were so by the request of the defendant.

The question for the jury was whether, with the knowledge which the plaintiff had of the condition of the sidewalk, by rea-

son of the erection upon and over it, it was consistent with ordinary care and prudence for her to pass under the erection. Whether she was in the exercise of such care and prudence was to be determined by the nature of the defect, the extent of her knowledge, and what was reasonably to be required or expected from a person of ordinary care and prudence in her situation.

The defendant however sought to take advantage of the special apprehensions of her mind, as she had expressed them in her testimony at the trial, and upon a former occasion. Instructions asked for, by which those apprehensions were made the test by which to decide the question of her care at the time of the accident, were adopted by the court. It was with reference to this test that the remark was added by the judge, that " the question was, what was her state of mind at that time." Adopting the state of her mind as the proper test, as the judge did by the request of the defendant, we are not prepared to say that this was not a correct application of it. However that may be, we are of opinion that the application thus made was in exact accordance with the instructions asked for by the defendant, and therefore gave no right to except.

The further instruction asked for proposed no change in the character of the test to be applied, except that the defendant then sought to make the case turn upon what the plaintiff thought of the safety of the erection in the morning, before the time of the accident, rather than what she thought of it at the time of the accident. As already suggested, we are not prepared to say that this would have been more nearly correct than the instructions previously asked for and given. If it were, we do not think the defendant could then require the court to change the previous instructions, so given by request ; certainly not unless the new instruction asked for proposed a correct statement of the law. This it did not do.

But beyond all questions of the comparative correctness of the instructions first asked for and given, and that subsequently asked for and refused, it appears to us that no prejudice could come to the defendant from the adoption, by the court, of the former rather than the latter ; because, upon the plaintiff's own testi-

mony, the fact that she had apprehensions of danger from the erection, at the time of passing under it and receiving the injury, was quite as clearly established as it was that she had such apprehensions at any previous time. *Exceptions overruled.*