RUSSELL B. PRATT *vs.* INHABITANTS OF WEYMOUTH.

Norfolk.    March 19, 20, 1888. — June 20, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Defect in Highway — Derrick — Highway Surveyor — Town Agent — Negligence.*

A derrick standing in a highway, and so insecurely supported that, by reason of its use by workmen in lifting stones for the repair of a culvert, it falls and injures a traveller, is not a defect, within the Pub. Sts. c. 52, § 18, such as will render a town liable for the injuries.

If the highway surveyor within whose district the culvert was situated, and whose duty it was to make the repairs, was directing the same, the mere facts that the town made a special appropriation for the work, and that the selectman who had general oversight of the district told the surveyor that the appropriation had been made for that purpose, and that the work was for him to do when the proper time arrived in the general work, furnish no evidence that the surveyor, instead of acting as a public officer, was the town's agent, for whose negligence it would be liable.

TORT for personal injuries. The first count of the declaration set forth a cause of action under the statute for injuries occasioned by a defect in Commercial Street, a highway which the defendant was bound to keep in repair, and alleged that a derrick erected for the repair of a culvert in that street was so insufficiently supported that it fell, by its own weight and by that of a load placed upon it, upon the plaintiff, who in the exercise of due care was lawfully travelling upon the street, due notice of the time, place, and cause of injury being given. The second count of the declaration set forth a cause of action at common law for the injuries, and alleged that the defendant town, having voted to widen the culvert, which the defendant was bound to keep in repair, and having appropriated money therefor, in executing the work by its agents and servants

erected a derrick near the centre of the street for hoisting stone, and so negligently and improperly secured it that it fell, by its own weight and by that of a stone being lifted by it, upon the plaintiff, then using due care and in the lawful use of the street, and greatly injured him.

At the trial in the Superior Court, before *Blodgett*, J., evidence was introduced tending to prove the following facts.

The plaintiff, who was a boy twelve years of age, was, prior to the accident, passing along the street a little after noon on his way to school, and sat down upon a rock to watch the operation of the derrick. Upon being warned that his position was not a safe one, he got up, and was starting along the street when he was struck and injured by the fall of the derrick. It was admitted that Commercial Street was a highway which the defendant was bound to keep in repair, and that proper notice of the injury had been given to the defendant. The culvert extended across the street over a running stream, and was about three and a half feet wide and two feet deep, being covered on top with stones and dirt to the depth of several inches. It had become obstructed, and was being made four feet wide and four feet deep for the freer passage of the water, the side walls being constructed of heavy stones. The repairs upon one half of the culvert, extending to the middle of the street, had been completed, and that portion had been put in order for use, and the work was being prosecuted on the other half. No signs or barriers were put up to warn travellers, except that the earth and stone from the uncompleted portion were piled up between it and the portion completed. The derrick had been erected near the centre of the street a day or two prior to the accident, which occurred on April 23, 1885, and was being used in the prosecution of the work for the handling of heavy stones. One of four guys by which it was supported extended into an adjoining meadow, the soil of which was soft and wet, and was there attached to a railroad sleeper buried in the ground. A chain, to which the guy was fastened, encircled the sleeper, which lay crosswise to the guy and was covered with earth to the depth of fifteen inches or two feet. At the time in question the workmen operating the derrick were engaged in hoisting a heavy stone, weighing about one thousand pounds, which was

to be placed in the side wall of the culvert, and the strain upon the guy was such that the sleeper was pulled out of the ground, and both the mast and boom of the derrick thereupon fell into the street, one of them striking the plaintiff and inflicting severe injuries upon him.

At the annual town meeting, held on March 2, 1885, the defendant town voted, under appropriate articles in the warrant, " to raise and appropriate for highways, town ways, and bridges $9,000, $700 to be expended by each highway surveyor, balance by selectmen," and " to raise and appropriate the sum of $200 for the purpose of enlarging the drain across Broad Street, . . . also the drain across Commercial Street." Five selectmen and five highway surveyors were elected in the defendant town in that year, one of each class being assigned to each of the five wards of the town. Thomas H. Humphrey was the selectman in charge of Ward Two, in which Commercial Street was situated. At a meeting of the selectmen held on March 6, 1885, an assignment was made of the highways, town ways, and bridges in each ward to the surveyor chosen for that ward at the annual meeting, in pursuance of which the following notice was sent:

" To Weston H. Cushing, Surveyor of Highways for the town of Weymouth : All the highways, town ways, and bridges within the limits of Ward 2 are assigned to you to keep in repair during the current year."

Subsequently Cushing took charge of the work on the culvert, both he and one Richards presenting bills therefor to the defendant, which were paid by warrants drawn by the selectmen.

Cushing testified as follows : " Thomas H. Humphrey told me there was an appropriation of $200 for widening the bridge across Broad Street, also across Commercial Street, and that it would come in with the general work when it came the proper time to do it, or when I saw fit to do it, something like that, — I cannot give his exact words. I got Richards to do the stone-work. The selectmen attended to any small affair for the highways in their ward. The culvert was possibly two feet deep inside the stone-work. It was filled with stuff that had collected there. It was four feet wide and four feet deep when we left it. A stream of water flows through it at all seasons of the year. It comes from a small artificial ornamental pond,

dammed up from a spring. I know that this work was done outside of the regular appropriation. . . . I told Mr. Humphrey there were $200 to spend there. Humphrey told me it would come in with my general work. . . . Cannot swear now what Humphrey did tell me to do about it. In substance Humphrey told me the work was for me to do, when the proper time arrived in the general work. . . . I probably had about $1,700 that year; I think the records show I had that. That is all the way I can answer whether I had the $700. I did not get it at one time; but when I did any work as surveyor of highways, I got my pay for it and the pay for my men. I have more or less men in my employ all the time."

The judge ruled that, upon this evidence, the action could not be maintained, directed a verdict for the defendant, and reported the case for the determination of this court. If the ruling was correct, judgment was to be entered on the verdict; otherwise, a new trial was to be granted.

*R. D. Smith & C. Q. Tirrell,* (*N. H. Pratt* with them,) for the plaintiff.

1. A derrick defectively supported, and standing in the highway so that it falls when in use, is a defect for which a town is or may be liable. *Drake* v. *Lowell,* 13 Met. 292. *Pedrick* v. *Bailey,* 12 Gray, 161, 163. *Day* v. *Milford,* 5 Allen, 98. *West* v. *Lynn,* 110 Mass. 514. In *Barber* v. *Roxbury,* 11 Allen, 318, the derrick was outside the highway, and not in use by the servants of the town or intended to be used by the town, and a majority of the court held that it was not a defect. The case of the snow projecting beyond the roof of the church, which was held not to be a defect, is easily distinguishable. *Hixon* v. *Lowell,* 13 Gray, 59. See also *Jones* v. *Boston,* 104 Mass. 75, 77. It is for the jury to decide, upon all the evidence, whether the derrick so placed and supported did not render the way dangerous for travellers, and therefore constitute a defect. *Ghenn* v. *Provincetown,* 105 Mass. 313, 316. *Dowd* v. *Chicopee,* 116 Mass. 93. There seems to be no reason why that which might be a defect if left to itself is not also a defect when used by the town, and in use for the very purpose for which it was erected. A stone may be a defect for which the town is liable, though moved from place to place in the highway within

twenty-four hours before the accident. *Maccarty* v. *Brookline*, 114 Mass. 527. See also *Graves* v. *Shattuck*, 35 N. H. 257. It is not easy to define, as matter of law, what can be said to be a direct rather than a remote cause contributing to the injury. The question is to be determined to a great extent by the evidence in each case bearing upon the complicated relations of cause and effect. *Smith* v. *Boston & Maine Railroad*, 120 Mass. 490, 493. If a stranger had exerted a force upon the derrick, or upon the handle of the windlass of the derrick, which caused it to fall upon the plaintiff, it might be a question of *proxima causa*, as in *Marble* v. *Worcester*, 4 Gray, 395. If by reason of a defect — which means something rendering the highway unsafe for travellers — a person is injured, he may recover for the injury, whether that which constitutes a defect be in use or not. A drawbridge is often laid out as a highway, and the draw has to be raised and let down. If, when suspended, it fell upon a passenger, by reason of an insufficient chain, it would be within the awning case, and also constitute a defect; and not less so, if it fell while being hoisted. It is to be observed that the injury took place in the travelled part of a highway, one part of which was occupied by the work which was going on, and in which no barriers were erected. Therefore the words of the statute apply, which provide that the town shall be liable if the " damage or injury might have been prevented by reasonable care and diligence " on the part of the defendant. See Pub. Sts. c. 52, § 18. The quoted words have not received full interpretation as yet. See *Hayes* v. *Cambridge*, 136 Mass. 402. The statute is evidently more extensive in meaning than the former statute, under which most of the cases were decided.

2. Under the second count, the town may be liable for an injury caused by the carelessness of persons employed by the town to do work which it is bound to do, or which it assumes to do. *Deane* v. *Randolph*, 132 Mass. 475. *Waldron* v. *Haverhill*, 143 Mass. 582. It could have done the work by any agent or servant, and would have been liable for the negligence of such employee; and it made no difference that the employee in this case was the surveyor of highways, as in *Hawks* v. *Charlemont*, 107 Mass. 414. *Deane* v. *Randolph*, *ubi supra*. The town of Weymouth did employ Cushing, as is shown by the conversa-

tions between him and the selectman for the ward, and by the payments made to Cushing and Richards by warrants drawn by the selectmen. The thing done in this case was not a work within the ordinary scope of a surveyor's duty. He could not have been required to enlarge the drain across Commercial Street, nor could he have been indicted for failing so to do. See Pub. Sts. c. 52, §§ 7–12. *Jones* v. *Lancaster*, 4 Pick. 149. It may be very easy to imply from facts the employment of a town surveyor in other works than those which he is bound to do. The selectman said to him that it would come in with his regular work. It was not his regular work, but would come in with his regular work. *Day* v. *Caton*, 119 Mass. 513. *Brigham* v. *Foster*, 7 Allen, 419. It may be interesting to inquire how far a highway surveyor may go beneath the surface of highways, or disturb existing structures, like bridges, under the pretence of repairs. It is probable that his duties are confined to the surface of the ground. *Callender* v. *Marsh*, 1 Pick. 418. *Loker* v. *Brookline*, 13 Pick. 343.

*H. E. Swasey*, (*R. M. Morse, Jr.* with him,) for the defendant.

DEVENS, J. The Superior Court having ruled upon the evidence offered by the plaintiff that he was not entitled to recover, and having ordered a verdict for the defendant, the question is presented, whether, upon either of the two causes of action set forth in the different counts of the plaintiff's declaration, he was entitled to have the case submitted to the jury. We shall not have occasion to consider whether the plaintiff was to be deemed a traveller upon the highway, which the defendant was bound to keep in repair, or whether, if the cause of the injury to the plaintiff was a defect therein for which the defendant was responsible, it had sufficient notice thereof, or whether proper notice of the injury, as required by statute, was given to the defendant before the action was brought, but shall assume that these subsidiary or preliminary inquiries should be answered in favor of the plaintiff.

The ground upon which the plaintiff sought to recover under his first count was by virtue of the statute, for an injury received through a defect or want of repair in the highway which the defendant was bound to maintain. Pub. Sts. c. 52, § 18. There was evidence that a derrick was erected and standing in the

travelled part of the road, to be used in repairing a culvert which extended across the road, and that the derrick was insufficiently and insecurely supported, one of the guy ropes extending into a neighboring meadow, and being there attached to a railroad sleeper buried in the ground, but so defectively fixed that it was pulled from its position by the weight of the derrick and by that of a stone which was being lifted thereby. By reason of this, the derrick, while thus in use by the workmen, fell upon the plaintiff, then passing in the highway, and injured him.

Whether a derrick standing in the highway and impeding travellers thereon, if one had actually collided with it, and whether a derrick thus situated, and so insecurely fixed that it was liable to and did fall from its own weight, or from purely natural causes, could be held to be a defect for which a town would be responsible, are questions not necessary now to discuss. The position of the plaintiff is, that a derrick standing in the highway, and defectively supported so that it falls when in use, is a defect for which the town is or may be liable, and thus that a machine used on the highway for the purpose of repairing it, controlled, worked, and manipulated at the time by workmen, becomes a defect, if by reason that it is thus operated, and that it is not sufficiently supported, injury is occasioned by its fall to one lawfully on the highway. To maintain his proposition the plaintiff relies much on *Drake* v. *Lowell*, 13 Met. 292, *Day* v. *Milford*, 5 Allen, 98, and *Pedrick* v. *Bailey,* 12 Gray, 161, 163, sometimes familiarly known as the awning cases. These decisions were put exclusively on the ground of the insufficient strength or defective condition of structures which were not mere incidents or attachments of the building, but were adapted to the sidewalk, and were a part of its construction and arrangement for use as such. It was deemed that danger from their insecure condition might properly be treated as arising from a defective or unsafe condition of the sidewalk. Where a sign, attached to the building only, fell, it was held, as in the case where ice overhung the sidewalk, that there was no liability of the town as for a defective highway. *Jones* v. *Boston*, 104 Mass. 75. *Hixon* v. *Lowell*, 13 Gray, 59. But in a case where a sign or transparency was supported above the sidewalk by a pole or post placed thereon, and injury was occasioned by the fall of the pole, it was held to

come within the cases in regard to awnings above ˙cited. *West* v. *Lynn*, 110 Mass. 514. This class of cases has been repeatedly said to express the extreme limit, in this direction, to which the liability of towns should be extended. *Barber* v. *Roxbury*, 11 Allen, 318. *Jones* v. *Boston, ubi supra.* In all of them,˙ the injury done was occasioned by the operation of purely natural causes, and did not proceed from any human agencies, as where a machine is controlled and managed by the laborers engaged thereon.

In *Barber* v. *Roxbury, ubi supra,* a rope was stretched across a highway, attached at each end to objects outside the limits of the highway, and when not in use lay loosely on the ground, not forming any obstruction to public travel until the men engaged in moving stone by means of the derrick raised the rope gradually by turning the crank to which it was attached, so as to lift the rope from the ground across the travelled space. The rope, while being so raised, struck the plaintiff's carriage, and injured her. It was held that such injury could not be said to have been caused by any defect or want of repair in the highway.

The liability for defective highways is a limited one. It has long been settled that a plaintiff cannot recover unless the defect is the sole cause of the injury. Where this follows from a defect united with some distinct, efficient, concurring cause, without which it would not have happened, unless, as suggested by Chief Justice Shaw in *Marble* v. *Worcester*, 4 Gray, 395, such concurring cause be pure accident, the plaintiff cannot recover. *Rowell* v. *Lowell*, 7 Gray, 100. *Kidder* v. *Dunstable*, 7 Gray, 104. *Lyons* v. *Brookline*, 119 Mass. 491.

Even if it be conceded, therefore, that the derrick was such a defect in the highway that, if the plaintiff had collided with it, himself exercising due care, or if by its own weight, or from any natural cause, by reason that it was insufficiently secured, it had fallen upon and injured him, he might have recovered, such is not the case at bar. It was the act of the workmen, who employed the machine in lifting weights for which it was not properly constructed, that contributed to the plaintiff's injury, and was the immediate moving cause of it. But for this there is no reason, from the evidence, to suppose it would have occurred.

If the defendant is responsible for the act of those who were managing the machine, that would be a liability entirely different from that arising from its obligation to maintain the way, which we shall have occasion hereafter to consider. The derrick did not thereby become a defect in the highway, by the fall of which the defendant was subjected to the statutory liability.

The only case to which we have been referred, or which we have found, where a town has been held responsible, under a statutory liability for a defect in the highway, to a traveller injured therein, in consequence of a defective structure under the control of human agency, and being thus used and worked, is *Hardy* v. *Keene*, 52 N. H. 370. Apparently the rule in New Hampshire is different from that established in this Commonwealth, and towns are held liable for defects in a highway, even where a distinct and independent cause contributes to the injury, unless the traveller's own carelessness is also a contributory cause. The cases in other States, where legislation and judicial decision differ, cannot always be safely followed. We are not disposed to accept the proposition, that a machine under the active charge of individuals is to be treated as a defect in the highway if injury results from its operation, and not merely from its presence there.

If the defendant was not under a statutory liability to the plaintiff because of a defect or want of repair in the highway, the plaintiff also sought to recover against it upon a common law liability for the negligence of its agents and servants employed by it in doing certain work which it had undertaken. This cause of action is set forth in the second count of the plaintiff's declaration, and there was evidence that in the erection of an insufficiently supported derrick, and in the operation of it in lifting weights which it was inadequate to sustain, there was negligence on the part of those doing the work of making or repairing the culvert across the road, in which they were engaged.

The question is therefore presented, whether, upon the evidence, Cushing, the person doing the work, and those engaged with him, are to be treated as the agents or servants of the defendant. Cushing was a highway surveyor, regularly chosen as such by the town, and the work was being done within the

district assigned to him.   That a town is not responsible for the acts of highway surveyors, or the men employed by them, in doing duty imposed upon them by law in the repair of highways, has been repeatedly decided, and the reasons for this exemption have often been stated.   *Hafford* v. *New Bedford,* 16 Gray, 297. *Barney* v. *Lowell,* 98 Mass. 570.   *Walcott* v. *Swampscott,* 1 Allen, 101.   *Tindley* v. *Salem,* 137 Mass. 171.   *Cushing* v. *Bedford,* 125 Mass. 526.   *Manners* v. *Haverhill,* 135 Mass. 165, 171. *McKenna* v. *Kimball,* 145 Mass. 555.   *Clark* v. *Easton,* 146 Mass. 43.

That a town, although it has duly chosen surveyors of highways, may, from time to time, or for special reasons or occasions, undertake to repair its ways and bridges in some other than the regular and statutory manner, and may select and employ men as its agents for this purpose, in which case it would be responsible for torts committed by them, must also be conceded.   *Hawks* v. *Charlemont,* 107 Mass. 414.   *Deane* v. *Randolph,* 132 Mass. 475. *Sullivan* v. *Holyoke,* 135 Mass. 273.   *Tindley* v. *Salem, ubi supra. Waldron* v. *Haverhill,* 143 Mass. 582.   Nor, if the town had undertaken to make the repair of the drain or culvert through an agent selected for the purpose, whom it was entitled to control in the performance of his work, would it be, perhaps, important that such agent was also a highway surveyor.

But in the case at bar the town selected no agent to do this work.   It did, indeed, pass a vote " to raise and appropriate $200 to enlarge the drain across Broad Street, . . . also the drain across Commercial Street," in the performance of which latter work the injury complained of by the plaintiff occurred ; but there is nothing to show that it was not left to be performed by the public officers whom it had chosen according to law, and on their official responsibility as such.   The work was itself the repair of a highway, within the scope of Cushing's authority and duty as highway surveyor.   In performing it, he had no authority from the town to act otherwise than as a public officer, nor did he attempt to do so, as far as the evidence shows.   If he had done so, it would not be important, as it would not be in his power alone to divest himself of his public character and constitute himself the servant of the town.   Nor, if it were possible to construe the appropriation for enlarging the drain on Commer-

cial Street, as the plaintiff urges it may be, — in which position we do not concur, — as requiring the selectmen to do this work by employing some suitable person as a servant of the town, does the case afford any evidence that Cushing was thus employed.

A general direction is given to the selectmen over the work of highway surveyors in their respective districts, to see that the money appropriated to such districts is carefully and judiciously expended. Pub. Sts. c. 52, § 3. *Benjamin* v. *Wheeler,* 15 Gray, 486, 490. The responsibility of doing the work, directing the laborers, and taking charge of the repairs, is that of the highway surveyor.

The facts that Humphrey, one of the selectmen, told Cushing that there was an appropriation of $200 to spend in widening the drain across Commercial Street, and that it would come in with the general work when it was the proper time to do it, or when Cushing " saw fit to do it," or that, as Cushing afterwards states, " In substance, Humphrey told me the work was for me to do, when the proper time arrived, in the general work," furnish no evidence of any engagement or contract with Cushing as the agent of the town, or of the selectmen, even if the selectmen had authority to make such engagement.

*Judgment on the verdict.*