Mr. Chief Justice Alvey
delivered the opinion of the Court:
This action was brought to recover damages suffered by reason of personal injuries received by the female plaintiff, Mary E. Swart, occasioned, as alleged, by the negligence or want of care of the defendant, the District of Columbia. The alleged negligence or want of care of the defendant consisted in allowing a defect or obstruction to exist in one of the streets of the city of Washington, whereby an acciden was caused resulting in an injury to the female plaintiff while a traveler on said street.
There is but a single question in the case, and that is, whether there was evidence sufficient to entitle the plaintiffs to have the case submitted to the jury for their consideration. The court below ruled that there was no sufficient evidence to be submitted to the jury, upon which a verdict for the plaintiffs could be maintained, and therefore directed a verdict to be entered for the defendant. Whether that was a proper ruling upon the evidence is the only question upon this appeal.
The evidence as set out in the bill of exception is not voluminous, and it is well and fairly stated in the briefs of both the appellants and the appellee. It is stated that the female plaintiff and her brother, the latter of whom testifying that he was an experienced driver of horses, and especially of the horse driven upon the occasion of the accident, were coming down First street northwest, in the city of
*410 Washington, from the Soldiers’ Home grounds, in a buggy-drawn by a horse driven by the brother. First street was at the time paved -with asphalt from curb to curb. The defendant, the municipality, was at the time, and had been for some time previous thereto, engaged in laying a sewer through and across First street, and as part of the work had cut two trenches in the street transversly thereof, but leaving uncut between the trenches in the middle of the street a portion of the asphalt pavement seven or eight feet wide for the passage of vehicles. The earth taken from the trenches was piled up in four heaps or piles along the north and south sides of each of the trenches, and there was no barricade or other protection about the trenches, except that there was just over the western edge of the eastern trench a piece of board about ten inches wide, and five or six feet long, or there was lying lengthwise over the last mentioned trench a board of sufficient length to cover it from end to end, but so narrow as to leave a portion of the trench uncovered on each side of the board. It was shown in proof that there was no other street leading directly down from the Soldiers’ Home ground that the plaintiff and her brother could have taken. The accident-occurred during the daylight, and there was no obstruction to prevent the excavations and the piles of earth on the sides of the trenches being seen for a considerable distance before they were approached.
The proof shows that the female plaintiff and her brother were in a buggy, and the brother was driving down the street at a moderate rate of speed, and that he saw the excavations and piles of earth within a block of reaching the place and knew that it was a narrow space through which he would have to drive — so narrow that it would require careful driving. The brother who was driving on the occasion of the accident was a witness, and testified for the plaintiffs. He says: “That it was daylight; that he saw within a block before reaching it there had been an *411 excavation in the street, and knew that it was a narrow place to drive through and required careful driving; that one had to be a pretty neat driver to get through there; he could not say what it was that affected his horse; when the horse got to the pile of dirt.it shied; it had passed the first pile, and its fore foot was about on a line with the trenches; the horse shied at something and went towards the east side, and that carried the left front wheel of the buggy on to one of the piles of dirt; that the wheel of the buggy went up on the pile, of dirt after the horse shied, and the horse trod on the board and its left hind leg went into the trench, and when it tried to get out the buggy turned over; that it was not the struggle of the horse to get its foot out, but it was the going up on the pile of dirt that caused the buggy to overturn; that Mrs. Swart screamed; that the horse did not start to run away until the witness got up from the ground where he was thrown; that the. buggy was not overturned because of the struggle of the horse to get his left hind foot out of the excavation, but by the wheel running up on the pile of dirt; that the buggy was not turned over before the horse put his foot in the hole; and that the horse did not start to run until the buggy had turned dear over. Witness would say that it must have been Mrs. Swart’s screams that started the horse.
“ Mrs. Swart was a witness for herself, and she testified that the wheel of the buggy went up on the northeast pile of dirt; the horse had entirely passed the front pile of dirt before the buggy tilted; that the horse shied and the wheel of the buggy went up on the embankment; that she could not see the horse’s feet, and does not know whether he went down in the excavation or not.”
There was also proof given as to the injuries received by the female plaintiff.
Upon reading this evidence, the first question that naturally suggests itself is, Why should the buggy have been driven into a place of danger, with full knowledge of the *412 risk, aud that it required very neat driving to go through the space between the excavations, according to the evidence of the driver of the buggy? It is true, every one has a right to travel the street; but it is an established principle, that a party who ventures to pass a dangerous defect or obstruction in a street or highway, knowing its condition, is bound to exercise a degree of care proportionate to the danger. This is well illustrated by a case decided by the Court of Appeals of New York, of Kelly v. Doody, 116 N. Y. 275. In that case the plaintiff was injured by falling into a trench in a sidewalk, and it appeared that she had frequently seen the trench, and had full knowledge of its existence, but when the accident happened her attention was diverted from the trench, and it was held she could not recover. Many other cases might be cited to the same effect.
The question on the evidence here is, were the excavations in the street and the piles of earth taken therefrom, such defects of the street, as would render the municipal government liable for the injury received by the plaintiff? Ordinarily, anything in the state or condition of the street which obstructs or makes it unsafe for ordinary travel is a defect or want of repair, and this whether the' obstruction be carelessly permitted to be placed in or upon it; or whether they be produced by the operation of natural causes, or by the act of public officers or private individuals. Barber v. Roxbury, 11 Allen, 318; Pettengill v. Yonkers, 116 N. Y. 558. But it does not always follow that because a trench, excavation, or pile of earth may be found in a street or highway, constituting a temporary obstruction to travel thereon, that therefore such obstruction is unlawful, and that for all inj uries that may be received by those attempting to use the street in that condition the municipality will be liable. Such excavations and piles of earth in the streets may be necessary in making the ordinary improvements of the city; such as sewers, laying of water and gas pipes, and *413 the like; and if made for such purposes, and with ordinary-care, they are not unlawful obstructions of the streets.
In this case the trenches in the street were made in the course of the construction of a sewer through and across First street. It is not contended that there was any unnecessary delay in the construction of the work, or that the trenches cut in the street were not necessary parts of the work. Nor is it contended that the earth taken from the trenches should have been deposited somewhere beyond the limits of the street. The earth was piled on the sides of the trenches to be used in refilling them when the work was done. Nor is it shown that there was any want of due care in the performance of the work itself. It is not contended that the street should have been barricaded against all travel; but it is contended that there ought to have been guards or barriers placed around the trenches and the piles of earth as means of protection to those passing or driving along the street. But how this could have been made effective during the day and while the work was in actual progress, is not made apparent. After an accident has occurred, it is always easy to suggest means by which it could or might have been averted. But if parties pursue the ordinary course in their work, and with reasonable care, they ought not to be held responsible for not anticipating possible events that do not ordinarily occur while such work is in progress. Here the trenches and piles of dirt were lawfully made, and were in open view of every one that passed. The shying of the horse seems to have been the immediate cause of the accident; but what caused the horse to shy is matter of pure conjecture. The buggy was overturned by being run upon one of the piles of earth, and that was caused by the shying of the horse from the regular course or way. It was the upsetting of the buggy, and throwing out the plaintiff that .produced the injury complained of. To entitle the plaintiff to recover for this injury, it must be shown that *414 the alleged negligent defect in the street, if defect were shown to exist, was the sole cause of the injury. Where the injury follows from a defect united with some distinct, efficient cause, without which it would not have happened, (unless, as suggested by Chief Justice Shaw in Marble v. Worcester, 4 Gray, 395, such concurring cause be pure accident), the plaintiff can not recover. Rowell v. Lowell, 7 Gray, 100; Kidder v. Dunstable, 7 Gray, 104; Lyons v. Brookline, 119 Mass. 491; Pratt v. Weymouth, 147 Mass. 245. It is not enough that the supposed defect in the way may have contributed indirectly to the accident, but the injury must be produced directly by the alleged defect, and this must appear to have been the sole cause of the injury. Farnum v. Concord, 2 N. H. 392, 394.
The accident was certainly a very unfortunate one. But we fail to discover in the record any such evidence of negligence or want of due care on the part of the municipal government, or its officers or agents, as would fairly sustain a verdict against such municipality for the injuries sustained by the female plaintiff. We think, therefore, the court below was right in withdrawing the case from the jury, and in directing a verdict to be entered for the defendant; and that ruling must be affirmed. Judgment affirmed.